also known as Jeff Williamson appellant. Mr. Gilbert for the appellant, Mr. Lernitz for the athlete. Good morning, Chief Judge Garland, Judge Rogers, Judge Srinivasan. My name is Richard Gilbert. And as is probably apparent from the briefs, I did not represent Mr. Williamson below a trial. He represented himself.  And although I'm prepared to argue on a number of points, perhaps my time would be best to be spent if I could answer the questions or concerns you might have about several different issues in this case. Well, on the first issue, you rely heavily on Russell. I do, Your Honor. Russell has a lot of general statements that are helpful, but I don't see how it helps you in this case, given the context and what your client is relying on. I think that Russell actually is a very close factual analysis. And let me explain why. In both cases, as you know, this is the Norton Russell case. And the issue there was the defendant's refusal to answer questions posed in the congressional hearings. And so the actual thing that the defendant did was to refuse to answer questions. And in this case, the thing that Mr. Williamson did was to threaten the life of an FBI agent. But as the court pointed out, in Russell, it would not be a crime to refuse to answer questions unless those questions were pertinent. In other words, there's an additional element beyond what the defendant did or, in that case, refused to do. In this case, it is the retaliation. In other words, this is not a federal crime unless Mr. Williamson does it in the factual context of this case, since there's no indication he was impeding or interfering with something contemporaneously. In this case, it's clearly a retaliation argument. And that is a different time and place than the threat. And so the time, place, and date information in the indictment as to when the threat was made does not answer any questions about the retaliation. And the court in Russell says, look, sometimes you have to go and you have to indict someone with greater specificity than simply citing the words of the statute. And I think that this is such a case. And I draw this primarily because, as I said, the fact that the retaliation obviously had to happen at a different time. And I guess the government's argument is it happens at a different place as well. So that's why I believe Russell's really a very good analogy for this case. So on entrapment, you rely on Brooks. The government doesn't respond in its brief to Brooks. But how do you distinguish McKinley? From Brooks? Well, from your case here, in terms of was there, even in your client's own testimony, enough as to inducement to require that instruction? Fine. I believe that, first of all, we have to understand that at least threats, coercive tactics, and harassment can be actions of government inducement. And so that's, of course, what we're relying on here is to say this is the inducement. As far as the evidence of the inducement is concerned, I think the problem with Judge Collier was that she was focused on this issue of the tickets. Now, I understand that a lot of Mr. Williamson's pleadings in this court, pleadings in the trial court, focus on those tickets as well. But that's not all that he did in his proffering, which I cite in my brief. He points out a number of different things over the years that he claims that the FBI, and particularly Special Agent Smith, did to harass him, to cause him financial hardship. And in one case, it's his belief that they caused him actual physical injury, resulting in hospitalization. So when the district court tried to get some details, were any provided? Yes, yes. And I believe if you look at his proffer, that he sets out these things. I can identify where in my brief I... And it was established that the FBI was there, that agents arrested people, that there was a scuffle, things like that. And then we have a subsequent incident where your client, close in time, is in the hospital, as he says, as a result of the scuffle with an FBI agent. I don't see anything like that in this case. Am I just wrong? You're more familiar with the record than I. Well, this is what the problem is, fundamentally, is that he makes assertive statements about what the FBI did, not just in issuing him those tickets all those years ago, but throughout, including right up until he's claiming his phone call purportedly is to stop what he perceives as harassment. Now, I understand that Mr. Williamson presents some, at least for those of us in the law, because we're mainly relying on logic and reason and so forth, I realize that Mr. Williamson presents some problems, because he's an angry man. He has no real confidence in the government. He's very deeply suspicious of law enforcement. He's obviously deeply suspicious about his defense attorneys. And so it may be tempting for those of us to say, oh, well, that's fantastical. That's one of the words the government uses. What he's saying happened. Really, that's our FBI agents are not universally corrupt. They don't encourage violence. Well, I think Brooks gives you a lot of leeway, but I'm just trying to see if there are any details here. I mean, the FBI is involved in a lot of things, but time. In any event, let me ask you just because I know your time is short here on your your sentence argument. How do you respond to the government's citations in its footnote to sentences that were longer? Because most of those cases involved individuals that had violence attached to them. I was struck. I believe it's the Pinson case, which is the fellow had actually tortured and killed animals and said, one day I'm going to graduate to people. The thing with these violent and disturbing threats by Mr. Williamson is there's no indication he was ever in a position to carry them out. There's no indications that Mr. Williamson, for all of his vulgar language and so forth, ever actually committed any of these acts of violence. I know he threatened they would rip the trachea out of the FBI agents, but he never did that when he was arrested. And so those other cases, I think you had people that posed a real obvious past evidence of violence. And that's why I believe the statistics that Mr. Lecker put together, which I cited verbatim, which I appreciate his having done that work. But that's why I think it shows this is an outlier. So can I go back to entrapment for just one second? So on entrapment as a just as a legal matter, we have cases that indicate that entrapment arises when officers or government agents are involved in soliciting or suggesting a crime. And it's difficult to fit this case within that kind of rubric because the argument would be that Mr. Williamson was provoked into committing a crime, not that the government agents and officers actually intended to solicit or suggest that he commit the crime that he committed. That's correct. And what's the legal support for the proposition that the category of entrapment ought to be expanded? Well, I rely on the fact that the description of police inducement includes threats, coercive actions and harassment. It's coercion in order to get somebody to commit an illegal act. So it's either you sell the drugs here or we're going to torture your family. But it's there's no indication here that the government was trying to get him to make a threat rather than this idea that they provoked him. Well, Mr. Williamson certainly felt that's what they were trying to do was to get him to make a threat. You heard him talk about in these calls to the United States attorney. Look, they're trying to if they if they push me too far and something goes wrong, it's going to be entrapment. Yeah, yeah, I understand that. He's saying that I can do whatever I want and I'm going to have a defense and here's my defense. I'm telling it to you in advance. But that's not the same thing as actually being entrapped. All the cases that I know about entrapment are agents allegedly and sometimes successfully in terms of the defense, try to get somebody to do a drug deal, to rob a bank, to commit a terrorist act, providing the money, providing helping to facilitate it. But I don't know of any cases where of any case at all where what's really happening is provocation, where the government is not the agents are not. There's nothing in the case indicating that the agents wanted to be threatened. That seems to be the problem here. Well, of course, we don't have any testimony from the agents that that's what was going on. In fact, I'm quite confident that the agents will all say, look, he's wrong. We're not doing anything like that to harass him. I mean, part of what makes this an interesting issue is the government is denying the harassment occurred. Can I ask you this? So under your theory, suppose that an assault actually occurred. So the harassment is so successful, I guess you'd say, that in fact, Mr. Williamson did assault the officer. Would the entrapment defense still apply? I don't know the answer to that. It seems like that's the logical implication of the theory is that the harassment on the part of the government agents was designed to elicit a response on the part of Mr. Williamson. And that response was at least a threat. But, of course, a threat is that I'm going to do something. And then if he does the thing that he threatens to do, he would still have been entrapped into doing that. Well, I think what keeps Mr. Williamson, in this case, under the realm of entrapment is even the threat itself. Is this what I need to do to get you to stop doing what you're doing? I mean, that's why we talked about the issue of the predisposition. He's clearly wanting what he perceives as harassment to stop. That's what all those other phone calls leading up to this do. And even in that phone call, he's saying that this is what's happening and it needs to stop. And what do I have to do? Do I have to do something dramatic, even though he's not actually in a position to do that? Thank you. Good morning. May it please the Court. Dan Lenners for the United States. I'll respond to Appellant's issues in the order in which he discussed them. The indictment in this case was sufficient. It need not have alleged the specific official act that Agent Schmidt was performing that caused Appellant to retaliate against Agent Schmidt because the specific official act is not an element of the offense. Section 115 makes it a crime to retaliate against a law enforcement officer on account of the performance of official duties, plural. And it's a jurisdictional hook for the statute that distinguishes a threat against Agent Schmidt, say, in his FBI agent duties versus a threat against Agent Schmidt because he's a bad neighbor. And so it's not distinguishing between particular official acts, but is instead just requiring that one distinguish between Agent Schmidt's official duties and his acts as a private citizen. And for that reason, the indictment in this case was plainly sufficient. So I'm not sure I totally follow what you're saying. If Agent Schmidt was his neighbor and did something that caused the defendant to make a threat, the indictment would still be sufficient? No, it wouldn't be a crime. And so by saying that the threat in this case was retaliation for Agent Schmidt's performance. Well, we have a situation in the paper these days where two neighbors had a tussle. All right? Now, suppose one of them was Agent Schmidt and the other one was the defendant. I'm just trying to understand what you're saying about the sufficiency of the indictment. It has nothing to do with his FBI duties. I just want to be clear about that. Then that tussle would not be the threat that was part of the tussle would not be a crime. He broke the ribs of the other guy, arguably. It would be a state crime. It would not be a federal crime under Section 115. It wouldn't be this crime. It wouldn't be this crime. It wouldn't be this crime, yes. The official duties requirement in this statute is the jurisdictional hook that allows the United States to prosecute this threat in federal court as opposed to it being a state court offense. So it's just a matter of the burden of the government. That's correct, Your Honor. And as the Seventh Circuit recognized, the government need not prove that the retaliation is for some specific act. The jury need not agree as to which official act was involved, but simply that it was an official duty rather than duties as a private citizen. As to the entrapment defense, I think the court correctly seems to understand the distinction between inducement and provocation. And I see no logical reason why this entrapment defense would need to stop at the crime of threats. Why, under defendant's theory, if he's truly been harassed to the degree he claimed for over a decade by Agent Schmidt, why he would have to stop at the threat, why he couldn't follow through on the threat, which in this case was, in fact, a threat to murder. And I see no logical reason. And the appellant can't really point to any genetic reason. Well, but, you know, we do have Brooke, and you don't respond to that in your brief. I understand. This Court has said in Brooks and elsewhere that the Court must credit the defendant's testimony and treat it as though it's true. But in numerous analogous circumstances, and other courts have recognized that. No matter how implausible the theory. That's the language in Brooks, Your Honor, yes. And I guess what I'm saying is that crediting the defendant's testimony, it's not entrapment. It's provocation, not inducement. I can discuss why I don't think Brooks goes as far as the language seems to say in that I think that. So in this case, we don't have to say that provocation could never amount to inducement, but simply that here, even taking the defendant's testimony as true, it's not sufficient provocation that would be tantamount to inducement. I mean, you and I can think of hypotheticals where you're so provoked that it could be viewed as inducement. I think the idea of inducement is the government's soliciting or suggesting a specific crime. And here, there's no crime that whatever Agent Schmidt's provocation has taken to be, that he appears to have been soliciting or suggesting from this defendant. No, I don't read the cases quite that way, is it? I mean, if the agent is trying to get him to buy illegal drugs and he shoots somebody, that has nothing to do with the drug offense. Do you think he has any sort of defense there where he says, I wouldn't have been in that situation but for the agent? I've not seen entrapment stretch that far, Your Honor. And in this case, as Your Honor pointed out, even taking the defendant's, frankly, implausible to the point of being fabulous story as true, it wasn't inducement. It was merely provocation, as the Fifth Circuit recognized. Well, you're fighting this circuit. That's all I'm getting at. Yes, Your Honor. But the Fifth Circuit didn't say we don't believe the defendant. The Fifth Circuit said— The court has to credit the defendant's testimony. The Fifth Circuit didn't reject the defendant's testimony. It said crediting his story, which I assume to be the same story he gave here, that he was provoked, he was not entrapped, he was not induced into committing those threats. And then on the sentencing, I think Judge Collier had lots and lots of interpersonal interaction with this particular defendant who was representing himself, Pro Se, who filed something like 130 Pro Se motions in the district court. You think that's a factor? I'm sorry? Go ahead. I think it's a factor in the sense that this court defers to district courts sentencing judgments because they are in a better position to know the defendant than the appellate court is. And Judge Collier was in a particularly good position to know this particular defendant because he represented himself, Pro Se, filed so many motions. She knew him far better than most trial judges know most defendants. And she properly recognized that he had been undeterred from spending effectively five-and-a-half years in jail on two previous threats convictions, committed this threat just six months after being released from jail, and that eight years – a longer sentence than five-and-a-half years was necessary for – to attempt to protect the public. I mean, he's, what, 50, 51 years old? I'm just trying to understand this. You know, he may have antagonized the judge by filing all these motions. That can't be a reason we would defer to the judge, would it? I don't believe that Judge Collier suggested she was antagonized by him. My argument is that she knew this defendant very well. She knew his thought process. She interacted with him. She saw him get angry. But the reasons you gave was he acted Pro Se and he filed a lot of motions. That's all I'm responding to. Right. So most defendants spent most of the trial standing silently next to their attorney. Sometimes they do. Sometimes they don't. Sometimes they don't. And Section 355-3. What? 355-3. That's not one of the factors listed. No, Your Honor. I was arguing that because – I'm not trying to resist your argument that we defer. It's just the reasons you gave, I thought, was if we were to say, well, it was Pro Se and he filed a lot of motions, so we defer. No, I think it's we defer because the trial court is in a better position and knows the particular defendant better than the appellate court. This trial court knew this defendant far better than most trial courts know most defendants because of these direct interactions, unlike most defendants who stand silently next to their attorney. Well, district courts get these pre-sentence reports, don't they? They do get the pre-sentence report. Right. But if that were the test, this court could also read the pre-sentence report, and so there would be no – none of this language about deferring to trial courts in their greater knowledge of the particular defendant. Mm-hmm. But in any event, the 8-year sentence was amply justified by the defendant's years of harassing Agent Schmidt as well as his prior convictions for which he remained undeterred. So it's the prior conviction, serving time, and within six months basically repeating the same. That was one of the reasons that Judge Collier gave. She also noted that the defendant was – he was not only undeterred but that he had been obsessed with these tickets for over 10 years, that his anger about them, if anything, seemed to be escalating. And what was the basis for that? The basis for those findings were both the nature of the threats at issue, both the 911 call and also the 14 calls to the AUSA and the calls to the Denver FBI U.S. Attorney's Office threatening to murder Agent Schmidt, that these particular threats were more directed at this particular FBI agent than the threats for which he was convicted in Texas, which were more generally aimed at the FBI. There was a letter that the defendant sent from jail threatening to destroy Agent Schmidt's life and his career. There was Agent Schmidt's testimony that after Agent Schmidt and Officer Gallegos issued the first ticket, the defendant's harassing and threatening phone calls to the FBI increased. The defendant began filing lawsuits against Agent Schmidt. I think that the judge actually laid this out pretty clearly at the beginning of her opinion. February 29th, he sent emails to the FBI headquarters threatening to kill agents. On May 15th, 2008, he left a message stating, I'm going to come down to the U.S. Attorney's Office and effing throw a couple of them at the effing door and then pick up a Mac 11 or Mac 10, which is a name for a semi-automatic weapon, and come down there and effing shoot the effing office up. On June 27th, 2008, he sent an email threatening to blow up FBI headquarters. Please advise Director Mueller I will take justice into my own hands and blow the front off the J. Edgar Hoover building. On July 1st, 2008, he made a threat in interstate commerce in violation of 875. He was convicted. I suppose that's the only reason I asked you why you started off with the pro se and filing a lawsuit. It seems unnecessary to go beyond what the district court laid out. I only got halfway through the set of threats, but they seem more than sufficient without embellishment. I agree. If there are no further questions, we'd ask that the judge make a motion. Is there further time? Mr. Gilbert, we'll give you some more time if you need to reply. Let me just respond. I did have a chance to look through my brief and let Judge Rogers know that, really, starting with page 9, running through about page 12, is where I do lay out the facts that Mr. Williamson tried to proffer concerning inducement. Now, I understand that's a different issue than whether provocation is the same as inducement, but at least these are the facts that he laid out. There are two documents in them and also his testimony. The only thing I guess I want to respond to is the point I made in my reply brief, and that is both going to the particular sentencing guideline commentary, but also what Mr. Williamson did in writing all the way up the chain of command, complaining about these tickets, was not harassment. An American citizen can write to increasingly higher levels of supervision. But he can't make all these. An American citizen can't threaten to blow up the FBI headquarters, threaten to go to the U.S. Attorney's Office with a semi-automatic and kill people, call and say, I intend to kill FBI agents. Those are all, the Supreme Court has made quite clear whether he's able to do those or not. The question is whether he made a threat, right? And these are threats. These are real threats. I agree. They're not First Amendment protected, right? I agree. Okay. So all those things, all the things I read, not one of them is First Amendment protected. Those that you read, that's correct. But when she's applying the upward departure, she's talking about the harassment over the years. She's talking about Mr. Williamson's desire to injure a special agent. She's clear. She listed, at the very beginning, she listed what the harassment over the years consisted of. And almost every one of those is a real threat as the Supreme Court's defined it. Well, with all due respect, Your Honor, I think that what she says she's focusing on later on is she's talking about the fact that Mr. Williamson did not lift the ticket issue go. All right? But when he's writing to the FBI and then when he's writing to the Department of Justice and the Attorney General and the President of the United States, he's not making threats. He's asking these agents to be held accountable. Whether that's reasonable or not, I don't know. But I submit that those letters, to the extent the judge is concluding that he's harassing Special Agent Schmidt because he's trying to get him punished, that's, I assume, what he means by held accountable, for what Mr. Williamson believed was an abuse of power in issuing those tickets. And that's what I'm suggesting, that he had a right to do, and I'm suggesting that it's improper for the judge to take those actions into account in increasing his sentence. I just have one question. The list that Mr. Lecker prepared of the other cases, this wasn't submitted to the district court, right? I don't believe so. All right, we'll take the matter under submission. Thank you. I'm sorry, Mr. Gilbert, you were appointed by the court. We're very grateful, as always, for your assistance. We really appreciate it. Thank you, Your Honor. It's been challenging. Excellent set of briefs. We appreciate them.
judges: Garland, Rogers, Srinivasan